# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BEDFORD ENVIRONMENTAL SERVICES, LLC<br>(d/b/a Ohio Reclamation and Waste Services, LLC)<br><br>and<br><br>KRICK ROAD HOLDINGS, LLC<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil No. 1:19-cv-224 |

**CONSENT DECREE**

# TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ............................................................................................. 3

II.      APPLICABILITY ............................................................................................................... 3

III.      DEFINITIONS ................................................................................................................... 5

IV.      CIVIL PENALTY .............................................................................................................. 8

V.      COMPLIANCE REQUIREMENTS .................................................................................. 9

VI.      SUBMISSIONS AND EPA REVIEW OF DELIVERABLES ......................................... 24

VII.      REPORTING REQUIREMENTS .................................................................................... 28

VIII.      STIPULATED PENALTIES ............................................................................................ 31

IX.      FORCE MAJEURE .......................................................................................................... 36

X.      DISPUTE RESOLUTION ............................................................................................... 38

XI.      INFORMATION COLLECTION AND RETENTION .................................................... 41

XII.      EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ......................................... 43

XIII.      COSTS ............................................................................................................................. 45

XIV.      NOTICES ......................................................................................................................... 45

XV.      EFFECTIVE DATE ......................................................................................................... 47

XVI.      RETENTION OF JURISDICTION ................................................................................. 47

XVII.      MODIFICATION ............................................................................................................. 47

XVIII.      TERMINATION .............................................................................................................. 48

XIX.      PUBLIC PARTICIPATION ............................................................................................. 49

XX.      SIGNATORIES/SERVICE .............................................................................................. 50

XXI.      INTEGRATION ............................................................................................................... 50

XXII.      FINAL JUDGMENT ....................................................................................................... 51

WHEREAS Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action concurrently with the lodging of this Consent Decree;

WHEREAS on November 23, 2017 (the "Asset Purchase Date"), Defendant Krick Road Holdings, LLC ("KRH") purchased the assets of a hazardous waste storage and recycling facility located at 7013 Krick Road, in Bedford, Ohio ("the Facility") and is the current owner of the Facility.

WHEREAS pursuant to an agreement with KRH, Defendant Bedford Environmental Services, LLC d/b/a Ohio Reclamation and Waste Services, LLC ("BES") is the current operator of the Facility.

WHEREAS the Facility is a licensed treatment, storage and disposal facility that holds Ohio Hazardous Waste Permit No. 02-18-0315, issued by the Ohio Environmental Protection Agency ("Ohio EPA") on December 28, 2016.

WHEREAS Ohio EPA granted KRH and BES authorization to own and operate the Facility pursuant to Ohio Hazardous Waste Permit No. 02-18-0315 on December 7, 2017.

WHEREAS, KRH filed a formal notification with Ohio EPA pursuant to Ohio's Cessation of Regulated Operations statute, Ohio Revised Code Chapter 3752 and Ohio Administrative Code, Chapter 3745-352 on January 5, 2018, in which it stated that it was temporarily discontinuing operations at the Facility.

WHEREAS the Complaint alleges that beginning on November 23, 2017, Defendants violated certain provisions of the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 et seq. ("RCRA") and regulations promulgated thereunder at 40 C.F.R. §§ 264.1050-1065 and

264.1080-1090 (incorporating requirements codified at 40 C.F.R. §§ 265.1050-1064 and 265.1080-1090) (RCRA Subparts BB and CC) at the Facility;

WHEREAS the alleged violations include violation of Section 3005(a) of RCRA which requires a permit for the storage, treatment, and disposal of hazardous wastes.  42 U.S.C. § 6925(a); 40 C.F.R. § 270.1(b) and (c);

WHEREAS Defendants have submitted to EPA an application for a permit under 40 C.F.R. Part 270, to authorize the storage, treatment and disposal of hazardous wastes subject to regulation under RCRA Subparts BB and CC.  The Parties acknowledge that issuance of the permit may take some months and, pursuant to the provisions herein, Defendants shall continuously comply with all requirements of RCRA Subparts BB and CC during EPA review of the permit application;

WHEREAS Defendants do not admit any liability or allegation regarding non-compliance with the RCRA or the regulations promulgated thereunder; and

WHEREAS the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.   JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to

28 U.S.C. §§ 1331, 1345, and 1355, and Section 3008(a)(1) and (g) of RCRA, 42 U.S.C.

§ 6928(a)(1) and (g), and has personal jurisdiction over the Parties.

2.      Venue is proper in this judicial district pursuant to Section 3008(a) and (g) of

RCRA, 42 U.S.C. § 6928(a); and 28 U.S.C. §§ 1391(b)-(c), 1395(a) because Defendants are

located in this judicial district and the violations alleged herein occurred within this district, at

the Facility.

3.      For purposes of this Consent Decree, or any action to enforce this Consent

Decree, Defendants consent to the Court's jurisdiction over this Decree and any such action and

over Defendants and consent to venue in this judicial district.

4.      For purposes of this Consent Decree, Defendants agree that the Complaint states

claims upon which relief may be granted pursuant to Section 3008 of RCRA, 42 U.S.C. § 6928.

## II.   APPLICABILITY

5.      The obligations of this Consent Decree apply to and are binding upon the United

States, and upon Defendants and any successors, assigns, or other entities or persons otherwise

bound by law.

6.      In the event that Defendants seek to transfer ownership or operation of the

Facility's operations regulated by EPA to another person or entity ("Transferee"), Defendants

shall give written notice of this Consent Decree along with a copy of the Consent Decree to the

Transferee prior to such transfer of ownership or operation of the Facility.  No later than sixty

(60) Days prior to such transfer, Defendants shall submit to the United States in accordance with

Section XIV (Notices) written notice of the prospective transfer, together with a copy of all material portions of the proposed written transfer agreement between Defendants and the prospective Transferee related to compliance under federal and state environmental laws, permits, and this Consent Decree.  The written notice shall describe the nature and extent of the transfer.  If the Defendants ask to be relieved of some or all obligations under this Decree, the written notice shall so indicate, and shall identify the relevant obligations.  Information in support of the request for relief from obligations under this Decree shall be included in the written notice.  Defendants shall provide the United States with additional information concerning the transfer or Transferee upon request.  Any attempt to transfer ownership or operation of the Facility or any portion of the Facility that is subject to this Consent Decree without complying with this Paragraph constitutes a violation of this Decree.

7.      Defendants shall condition any transfer, in whole or in part, of ownership or operation of the Facility upon the execution by the Transferee of a modification to this Consent Decree pursuant to Section XVII (Modification), which makes the terms and conditions of this Consent Decree applicable to the Transferee.  If both ownership and operation of the Facility is being transferred, Defendants may request that the United States agree to a modification of the Consent Decree pursuant to Section XVII below to make the terms and conditions of this Consent Decree applicable to the Transferee and to relieve Defendants of their obligations under this Consent Decree.

8.      Defendants shall provide a summary of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent

Decree.  Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

9.      In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.      DEFINITIONS

10.     Terms used in this Consent Decree that are defined in RCRA or the Clean Air Act ("CAA"), 42 U.S.C. §§  6901 et seq. and 7401 et seq., or in regulations promulgated pursuant to RCRA or the CAA shall have the meanings assigned to them in RCRA, the CAA or such regulations, unless otherwise provided in this Consent Decree.

11.     Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

"Air Emission Control" means the cover and/or closure device(s) used to control air pollutant emissions from each tank subject to the tank standards set forth in RCRA Subpart CC.

"Business Day" shall mean every Day except Saturday and Sunday and federal holidays.

"CAA" shall mean the Clean Air Act, 42 U.S.C. §§ 7401 et seq.

"Complaint" shall mean the complaint filed by the United States in this action.

 "Consent Decree" or "Decree" shall mean this Consent Decree.

"Date of Lodging" shall mean the date on which the United States files a "Notice of Lodging" of this Consent Decree with the Court for the purpose of providing notice and the opportunity to comment to the public in accordance with 28 C.F.R. § 50.7.

"Day" shall mean a calendar day unless expressly stated to be a Business Day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next Business Day.

"Defendants" shall mean Bedford Environmental Services, LLC and Krick Road Holdings, LLC.

"Effective Date" shall have the definition provided in Section XV.

"EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

"Facility" shall mean the treatment, storage and disposal facility that is located at 7013 Krick Road, in Bedford, Ohio.

"Hazardous Air Pollutant" or "HAP" shall mean those pollutants listed in Section 112(b), as revised by EPA from time to time. 42 U.S.C. § 7412(b); 40 C.F.R. Part 63, Subpart C.

"Interest" shall mean the interest rate specified by 28 U.S.C. § 1961.

"Major Source of HAPs" shall mean the Facility at any time it emits or has the potential to emit considering controls, in the aggregate more than 10 tons per year ("TPY") of any one HAP or more than 25 TPY of any combination of HAPs.

"Month" or "monthly" shall mean calendar month.

"Ohio EPA" shall mean the Ohio Environmental Protection Agency and any of its successor departments or agencies.

"Ohio PTIO Permits" shall mean any Ohio air Permits to Construct/Operate issued by the Ohio EPA and administered by Ohio EPA and/or the City of Cleveland, Division of Air Pollution Control including but not limited to the following permits:

- Permit No. P0108723, issued 2/29/2012 (Emission Units P007, P008, P009, P010, P011, P018, P019);

- Permit No. P0095084, issued 2/29/2012 (Emission Units P012, P013, P015, P016); and

- Permit No. P0115886, issued 1/23/2014 (Emission Unit P016, modification).

"Paragraph" shall mean a portion of this Decree identified by an Arabic numeral and all Subparagraphs thereunder.

"Parties" shall mean the United States and Defendants.

"Potential RCRA Subpart AA Triggering Change(s)" shall mean the operation of equipment or units at the Facility that has the potential to trigger applicability of RCRA Subpart AA requirements including thin film evaporators, distillation units, and associated processing tanks.

"RCRA" shall mean the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 et seq.

"RCRA Subpart AA" shall mean the air emissions standards for process vents promulgated by EPA and as of the Date of Lodging codified at 40 C.F.R. §§ 264.1030 et seq. (which, as to the Facility, incorporate requirements set forth at 40 C.F.R. §§ 265.1030 et seq.).

"RCRA Subpart BB" shall mean the air emissions standards for equipment leaks promulgated by EPA and as of the Date of Lodging codified at 40 C.F.R. §§ 264.1050 et seq. (which, as to the Facility, incorporate requirements set forth at 40 C.F.R. §§ 265.1050 et seq.).

"RCRA Subpart CC" shall mean the air emissions standards for tanks, surface impoundments, and containers promulgated by EPA and as of the Date of Lodging codified at 40 C.F.R. §§ 264.1080 et seq. (which, as to the Facility, incorporate requirements set forth at 40 C.F.R.§§ 265.1080 et seq.).

"Screening Value" shall mean the highest emission level that is recorded at each piece of Covered Equipment or Covered Tank, as applicable, as it is monitored in compliance with Method 21.

"Section" shall mean a portion of this Decree identified by a Roman numeral and all Paragraphs and Subparagraphs thereunder.

"State" shall mean the State of Ohio.

"Subparagraph" shall mean a portion of a Paragraph of this Consent Decree that is identified by a lower case letter, lower case number, or lower case Roman numeral, standing alone or in parentheses, and all Subparagraphs thereunder.

"Tank Level 1 Controls" refers to the Air Emission Controls for a tank that meets the conditions specified in 40 C.F.R. §§ 264.1084(b)(1)(i) through (b)(1)(iii) or 265.1085(b)(1)(i) through (b)(1)(iii) and controls air pollutant emissions pursuant to 40 C.F.R. §§ 264.1084(c) or 265.1085(c).

"Tank Level 2 Controls" refers to the Air Emission Controls for a tank that does not meet the conditions specified in 40 C.F.R. §§ 264.1084(b)(1)(i) through (b)(1)(iii) or 265.1085(b)(1)(i) through (b)(1)(iii) and controls air pollutant emissions pursuant to 40 C.F.R. §§ 264.1084(d) or 265.1085(d).

"Title V Permit" shall mean a permit issued with respect to the Facility by Ohio EPA pursuant to Subchapter V of the CAA, 42 U.S.C. §§ 7661-7661e, including any revisions and modifications thereto, and any newly issued permits that replace prior Title V permits.

"United States" shall mean the United States of America, acting on behalf of EPA.

## IV.    CIVIL PENALTY

12.     No later than 30 Days after the Effective Date, Defendants shall pay the sum of NINETY THOUSAND DOLLARS ($90,000.00) with Interest accruing from January 16, 2018.

13.     Defendants shall pay the civil penalty due by FedWire Electronic Funds Transfer (EFT) to the U.S. Department of Justice account, in accordance with instructions provided to Defendants by the Financial Litigation Unit (FLU) of the United States Attorney's Office for the Northern District of Ohio after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System (CDCS) number, which Defendants shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

> Richard M. Timm, Jr.
> General Counsel
> Bedford Environmental Services, LLC
> 7013 Krick Road
> Bedford, Ohio 44145
> rtimm@chemtron-corp.com

on behalf of Defendants.  Defendants may change the individual to receive payment instructions on their behalf by providing written notice of such change to the United States and EPA in accordance with Section XIV (Notices).

14.     At the time of payment, Defendants shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to the United States via email or regular mail in accordance with Section XIV (Notices); and (iii) to EPA in accordance with Section XIV (Notices).  Such notice shall state that the payment is for

the civil penalty owed pursuant to the Consent Decree in *United States of America v. Bedford Environmental Services, LLC and Krick Road Holdings, LLC* and shall reference the civil action number, CDCS Number and DOJ case number 90-7-1-11845.

15.     Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating their federal income tax.

## V.     COMPLIANCE REQUIREMENTS

**A.     Compliance with Applicable Law and Permits**

16.     Defendants shall comply with applicable provisions of RCRA and the CAA and applicable regulations and permits issued thereunder at the Facility.

**B.     RCRA Compliance Requirements**

**i.     *RCRA Permitting Requirements***

17.     Defendants have submitted an application to EPA Region 5 for a federal permit pursuant to applicable RCRA regulations, 40 C.F.R. Part 270, that will authorize the treatment, storage, and disposal of hazardous waste at the Facility subject to regulation under RCRA Subparts BB and CC.

18.     Beginning on October 1, 2018, Defendants shall take all other actions necessary to obtain a federal RCRA permit for the treatment, storage, and disposals of hazardous wastes at the Facility subject to regulation under RCRA Subparts BB and CC.  Defendants shall cooperate fully with EPA by providing any information EPA needs to assess the permit application in a timely manner or undertaking any operational change(s) EPA requests as a condition of permit issuance.

### ii. *Applicability of and Compliance with RCRA Subpart AA*

19.     Since the Asset Purchase Date, Defendants have not operated equipment and units formerly subject to RCRA Subpart AA including thin film evaporators, distillation units, and associated processing tanks at the Facility.

20.     Beginning on October 1, 2018, before commencing any Potential RCRA Subpart AA Triggering Change(s) for the purposes of testing, maintenance, evaluations, and assessments, Defendants shall first undertake the following actions.

a.     No later than 60 Days before commencing any Potential RCRA Subpart AA Triggering Change(s), Defendants shall submit to EPA and Ohio EPA for comment pursuant to Section VI (Submission and EPA Review of Deliverables) a notification that:

(1)     identifies the unit or equipment to be operated,

(2)     describes any emissions controls on the unit or equipment,

(3)     specifies the dates and times of such operation,

(4)     describes the testing, maintenance, evaluation or assessments that will be conducted on the unit or equipment during such operation, and

(5)     provides any supporting documents or data.

b.     EPA and/or Ohio EPA may request additional information and Defendants shall provide such information in a timely manner.

c.     Defendants may not operate any unit or equipment subject to this Paragraph 20 for more than 120 Days without EPA approval.

21.     Beginning on October 1, 2018, except for operation of units and/or equipment for the purpose of testing, maintenance, evaluations, and assessments in compliance with

Paragraph 20 above, before commencing any Potential RCRA Subpart AA Triggering

Change(s), Defendants shall take the following actions.

       a.      No later than 60 Days before undertaking any Potential RCRA

Subpart AA Triggering Change(s), Defendants shall notify EPA and Ohio EPA of the equipment

or units that Defendants expect to operate.  In this notice, Defendants shall include the following

information:

           (1)     a description and timetable for the proposed change(s);

           (2)     the effect of the Potential RCRA Subpart AA Triggering

Change(s) on emissions of any pollutant or hazardous waste subject to regulation under RCRA

Subpart AA;

           (3)     a statement of whether the Potential RCRA Subpart AA Triggering

Change(s) will or will not result in one or more units becoming subject to the requirements of

RCRA Subpart AA and the basis for that statement;

           (4)     all documents, data, and test reports underlying the information

provided in Subparagraphs 21a(1)-(3) above; and

           (5)     a copy of the permit application submitted pursuant to

Subparagraph 24 below, if applicable.

       b.      EPA or Ohio EPA may request additional information or require tests

(including stack tests) and Defendants shall provide such information or conduct such testing in a

timely manner.

c.      Concurrent with the notice provided in Subparagraph 21.a above, Defendants shall submit to EPA for approval pursuant to Section VI (Submission and EPA Review of Deliverables) a Compliance Plan that either:

(1)      details measures Defendants will undertake to comply with the requirements of RCRA Subpart AA ("Compliance Plan") after the Potential RCRA Subpart AA Triggering Change(s) are implemented.  Defendants shall also submit all documents, data, and test reports that support the Compliance Plan; or

(2)      states that Defendants have determined that the proposed Potential RCRA Subpart AA Triggering Change(s) will not result in any units and/or equipment becoming subject to RCRA Subpart AA requirements, provides the basis of this determination, including relevant data and documents, and includes measures that will be implemented to ensure that the unit and/or equipment does not become subject to RCRA Subpart AA requirements.

22.      Beginning on October 1, 2018, Defendants shall not undertake any Potential RCRA Subpart AA Triggering Change(s) unless EPA has approved a Compliance Plan submitted pursuant to Paragraph 21.c above.

23.      Beginning on October 1, 2018, upon EPA approval of a Compliance Plan submitted pursuant to Paragraph 21.c above, Defendants shall continuously implement the Compliance Plan in accordance with the requirements and schedules contained therein.

24.      Beginning on October 1, 2018, except for operation of units and/or equipment for the purpose of testing, maintenance, evaluations, and assessments in compliance with Paragraph 20 above, prior to operation of any unit and/or equipment that is subject to RCRA Subpart AA requirements, Defendants shall submit a complete application to EPA to amend the

Facility's federal RCRA permit pursuant to applicable RCRA regulations, 40 C.F.R. Part 270, to authorize the treatment, storage, and disposal of hazardous waste at the Facility subject to regulation under RCRA Subpart AA.  Defendants shall take all other actions necessary to obtain a federal RCRA permit for the treatment, storage, and disposal of hazardous waste at the Facility subject to regulation under RCRA Subpart AA including providing EPA any requested information in a timely manner.

### iii.    *Applicability of and Compliance with RCRA Subpart BB*

25.    <u>Facility-Wide RCRA Subpart BB Program Plan</u>.

a.    By no later than the Effective Date, Defendants shall develop and submit to EPA for comment a facility-wide RCRA Subpart BB Program Plan that meets the following requirements:

(1)    lists all equipment subject to RCRA Subpart BB requirements ("Covered Equipment") as of the Effective Date ("Covered Equipment List");

(2)    sets forth applicable leak definitions and applicable monitoring frequencies for each type of equipment;

(3)    sets forth a tracking program ("Equipment Management of Change Protocol") that ensures that new pieces of Covered Equipment added to the Facility for any reason are added to the Covered Equipment List and subject to the Facility's RCRA Subpart BB Program Plan and that pieces of equipment that are taken out of service are removed from the Covered Equipment List;

(4)    confirms that all employee and contractor personnel that will perform RCRA Subpart BB functions at the Facility have been appropriately trained; and

(5)     describes in general how the Facility plans to implement the

RCRA Subpart BB Program Plan.

b.     Defendants shall implement the RCRA Subpart BB Program Plan within

the deadlines provided in Paragraph 51 below.

c.     Defendants shall review the RCRA Subpart BB Program Plan annually

and update it as needed by no later than December 31 of each year.  Defendants shall submit

such updates to EPA with the semi-annual report due January 31 of each calendar year pursuant

to Paragraph 56 below.

26.     <u>Monitoring of Covered Equipment</u>.  Beginning no later than the Effective Date,

Defendants shall monitor each piece of Covered Equipment ("RCRA Subpart BB Monitoring")

in accordance with the following requirements.

a.     Defendants shall perform RCRA Subpart BB Monitoring at the

monitoring frequencies required by RCRA Subpart BB unless more frequent monitoring is

required by federal, state, or local laws or regulations, in which case Defendants shall follow the

more frequent monitoring schedule.

b.     Defendants shall comply with Method 21 as set forth in 40 C.F.R. Part 60,

Appendix A-7 in performing RCRA Subpart BB Monitoring, using an instrument attached to a

data logger (or an equivalent instrument) which directly records electronically the Screening

Value detected at each piece of Covered Equipment, the date and time that each Screening Value

is taken, the identification numbers of the monitoring instrument and the technician's name.

Defendants shall transfer this monitoring data to an electronic database (RCRA Subpart BB

Database) within five (5) Business Days of completing a RCRA Subpart BB monitoring event for recordkeeping purposes.

c.      If, during monitoring, a piece of Covered Equipment is discovered that is not on the Covered Equipment List, Defendants shall monitor that piece of Covered Equipment and record, by any means available, the Screening Value, the date and time of the Screening Value, and the identification numbers of the monitoring instrument and technician's name.  In such an instance, the failure to initially record the information electronically, in the data logger, does not constitute a violation of this Paragraph's requirement to record the required information electronically, provided that Defendants thereafter add that piece of Covered Equipment to the Covered Equipment List and record the information regarding the monitoring event into the RCRA Subpart BB Database.

27.    Visual Inspections for Certain Covered Equipment.

a.      Defendants shall conduct visual inspections when performing RCRA Subpart BB Monitoring pursuant to Paragraph 26 above for the following types of Covered Equipment: pumps and valves in heavy liquid service, pressure relief devices in light liquid or heavy liquid service, flanges, and other connectors (see 40 CFR §§ 264.1058, 265.1058).

b.      Defendants shall conduct the visual inspections of the types of Covered Equipment listed in Subparagraph 27.a above at the frequency required by RCRA Subpart BB and include a check for defects that could result in air pollutant emissions.  Defects include, but are not limited to: visible cracks, wear and tear, deterioration, holes or gaps, rust, damaged seals or gaskets on closure devices, and indications of liquids dripping.  If a defect is observed, Defendants shall record the following information in an inspection log that is kept with the

Facility's operating record: the Covered Equipment (e.g., equipment identification number, between x and y valves), date and time the defect was discovered, the technician who observed the defect, and a digital photograph of the defect.

28.    Leak Repair.  Defendants shall perform repairs and repair verification monitoring in accordance with RCRA Subpart BB for all leaks from Covered Equipment detected at or above the leak definitions in RCRA Subpart BB, and for all Covered Equipment where evidence of a potential leak is detected through audio, visual, or olfactory sensing.

29.    Management of Change.  Beginning no later than the Effective Date, Defendants shall ensure that each piece of equipment added to the Facility is evaluated to determine if it is subject to RCRA Subpart BB regulations and, if subject to RCRA Subpart BB, is added to the Covered Equipment List.  Defendants also shall ensure that each piece of Covered Equipment that was subject RCRA Subpart BB is eliminated from the Covered Equipment List if it is no longer subject to RCRA Subpart BB (e.g. if it is physically removed from the unit).  This evaluation shall be part of Defendants' facility-wide Equipment Management of Change Protocol.

30.    RCRA Subpart BB Training.

a.    By no later than the Effective Date, Defendants shall develop a RCRA Subpart BB Training Program (or, as applicable, require their contractor to develop a RCRA Subpart BB Training Program for the contractor's employees).  The RCRA Subpart BB Training Program shall:

(1)    describe the training to be completed by all Defendants' employees and contractors whose duties may relate to compliance with RCRA Subpart BB.  Such training

shall include all aspects of RCRA Subpart BB and the Facility's RCRA Subpart BB Program Plan;

(2)     require that no later than 30 Days after the Effective Date, Defendants' employees and contractors whose duties may relate to compliance with RCRA Subpart BB shall complete the training program;

(3)     require that each employee and contractor newly-assigned to RCRA Subpart BB responsibilities complete the RCRA Subpart BB training program before beginning such work; and

(4)     require that each employee and contractor shall complete the RCRA Subpart BB Training Program once per calendar year.

b.     Beginning 30 Days after the Effective Date and continuing thereafter Defendants shall implement the RCRA Subpart BB Training Program.

31.     <u>Recordkeeping and Reporting.</u>  Defendants shall submit a RCRA Subpart BB Program Compliance Status Report with each semi-annual report submitted to EPA pursuant to Paragraph 56 below for the time period covered by the semi-annual report.  The RCRA Subpart BB Program Compliance Status Report shall include the following information:

a.     the number of employees and contractors whose duties relate to RCRA Subpart BB compliance;

b.     an identification and description of any non-compliance with the requirements of RCRA Subpart BB or Paragraphs 16, and 25-31 of this Consent Decree; and

c.     a description of trainings held in accordance with Paragraph 30 above.

iv.    *Applicability of and Compliance with RCRA Subpart CC*

32.    RCRA Subpart CC Program Plan.

a.    By no later than the Effective Date, Defendants shall develop and submit to EPA for comment a facility-wide RCRA Subpart CC Program Plan that meets the following requirements:

(1)    lists all tanks subject to RCRA Subpart CC requirements ("Covered Tanks") as of the Effective Date ("Covered Tanks List") and identifies the following information for each Covered Tank:

(a)    each type of Air Emission Control associated with each Covered Tank, including whether the controls are Tank Level 1 Controls or Tank Level 2 Controls pursuant to RCRA Subpart CC;

(b)    if Tank Level 1 Controls are associated with a Covered Tank, provide the determination for the maximum organic vapor pressure of the hazardous waste in the tank performed in accordance with the requirements of RCRA Subpart CC; and

(c)    if applicable, for each tank not using Air Emission Controls specified in RCRA Subpart CC, provide the information required pursuant to RCRA Subpart CC;

(2)    includes the Facility's written inspection and monitoring plan pursuant to RCRA Subpart CC;

(3)    describes the Facility's recordkeeping and reporting system pursuant to RCRA Subpart CC;

(4)     contains a tracking program ("Tank Management of Change Protocol") that ensures that any new Covered Tanks added to the Facility are integrated into the RCRA Subpart CC Program Plan and that Covered Tanks that are taken out of service are removed from the RCRA Subpart CC Program Plan;

(5)     confirms that employee and contractor personnel that will perform RCRA Subpart CC functions at the Facility have been appropriately trained; and

(6)     describes in general how the Facility plans to implement the RCRA Subpart CC Program Plan.

b.     Defendants shall implement the RCRA Subpart CC Program Plan within within the deadlines provided in Paragraph 51 below.

c.     Defendants shall review the RCRA Subpart CC Program Plan annually and update it as needed by no later than December 31 of each year.  Defendants shall submit such updates to EPA with the semi-annual report due January 31 of each calendar year pursuant to Paragraph 56 below.

33.     <u>Visual Inspections</u>.  Defendants shall conduct visual inspections of all Covered Tanks and associated Air Emission Controls including pressure relief devices, opening set points, fixed roofs, and closure devices on an annual basis including a check for defects that could result in air pollutant emissions.  Defects include, but are not limited to: visible cracks, holes, or gaps in the roof sections or between the roof and the tank wall; broken, cracked, or otherwise damaged seals or gaskets on closure devices; wear and tear or rust; and broken or missing hatches, access covers, caps, or other closure devices.  If a defect is observed, Defendants shall record the information required by RCRA Subpart CC, including, but not limited to, the date the

defect was discovered, the location of the defect, a written description of the defect along with a digital photograph of the defect, and the date the defect was repaired.  Defendant shall keep this information in the Facility's operating record.

34.   <u>Management of Change</u>.  Beginning no later than the Effective Date, Defendants shall ensure that each Covered Tank and associated Air Emission Controls (if any) added to the Facility is evaluated to determine if it is subject to RCRA Subpart CC regulations and, if subject to RCRA Subpart CC, is added to the Covered Tank List.  Defendants also shall ensure that each Covered Tank that was subject to RCRA Subpart CC is eliminated from the Covered Tanks List if it is no longer subject to RCRA Subpart CC (e.g. if it is physically removed from the Facility). This evaluation shall be part of Defendants' facility-wide Tank Management of Change Protocol.

35.   <u>Repair of Defects</u>.  Defendants shall perform repairs and repair verification in accordance with RCRA Subpart CC for all defects in Covered Tanks and associated Air Emission Controls detected.

36.   <u>RCRA Subpart CC Training</u>.

a.   By no later than the Effective Date, Defendants shall develop a RCRA Subpart CC Training Program (or, as applicable, require their contractor to develop a RCRA Subpart CC Training Program for the contractor's employees).  The RCRA Subpart CC Training Program shall:

(1)   describe the training to be completed by all of Defendants' employees and contractors whose duties may relate to compliance with RCRA Subpart CC. Such training shall include all aspects of RCRA Subpart CC and the Facility's RCRA Subpart CC Program Plan;

(2)     require that no later than 30 Days after the Effective Date, Defendants' employees and contractors whose duties may relate to compliance with RCRA Subpart CC shall complete the training program;

(3)     require that each employee and contractor newly-assigned to RCRA Subpart CC responsibilities complete the RCRA Subpart CC training program before beginning such work; and

(4)     require that each employee and contractor complete the RCRA Subpart CC Training Program once per calendar year.

b.     Beginning 30 Days after the Effective Date and continuing thereafter Defendants shall implement the RCRA Subpart CC Training Program.

37.     <u>Recordkeeping and Reporting</u>.  Defendants shall submit a RCRA Subpart CC Program Compliance Status Report with each semi-annual report submitted to EPA pursuant to Paragraph 56 for the time period covered by the semi-annual report.  The RCRA Subpart CC Program Compliance Status Report shall include the following information:

a.     the number of employees and contractors whose duties related to RCRA Subpart CC compliance;

b.     an identification and description of any non-compliance with the requirements of RCRA Subpart CC, or Paragraphs 16 and 32-37 of this Consent Decree; and

c.     a description of trainings held in accordance with Paragraph 36 above.

**C.     Clean Air Act Compliance Requirements**

38.     Defendants hereby certify that as of the Date of Lodging, the Facility is not a Major Source of HAPS but is a "Synthetic Minor" potential source of air emissions, including

HAPs and has a federally enforceable state operating permit ("FESOP") issued by Ohio EPA on February 29, 2012, that sets forth the following limits on HAP emissions per 12-month summation:

| Emission Unit | Single HAP | Combined HAP |
|---|---|---|
| P007 | 0.35 | 0.99 |
| P008 | 0.7 | 1.96 |
| P009/P010 | 0.68 | 1.9 |
| P011 | 0.58 | 2.1 |
| P018 | 0.42 | 1.18 |
| P019 | 0.16 | 0.45 |

39.     No later than the Date of Lodging, Defendants shall ensure the FESOP includes any monitoring, recordkeeping, and reporting of each operating point source, including any uncaptured emissions and fugitives reasonably necessary to demonstrate that the Facility is not a major source of HAPs.

40.     No later than the Date of Lodging, Defendants shall reasonably estimate HAP emissions from each operating point source and fugitive HAP emissions at the Facility including emissions from vents, reactors, distillations columns, storage vessels, process vessels, tanks, furnaces, coating lines, ovens, incinerators, boilers, tanks, bulk storage, pumps, compressors, agitators, pressure relief devices, sampling connection systems, open-ended valves or lines, valves, connectors, surge control vessels, bottoms receivers, instrumentation systems, and wastewater streams not managed in a point source.  *See* the 1995 Protocol for Equipment Leak Emission Estimates for estimating emissions from fugitive sources (EPA-453/R-95-017).

41.     For any control device or process limitations used by the Defendants to maintain HAP emissions below the major source threshold, Defendants shall include operating

United States v. Bedford Environmental Services, et al Consent Decree          Page 22.

parameters, recordkeeping and reporting for those parameters, and process limitations in the FESOP.  Defendants shall also ensure that the Facility operates the control device with good air pollution control practices for minimizing emissions and with an Operations and Maintenance Plan.

42.     Defendants shall also evaluate any area source standards that apply to the facility under 40 C.F.R. Parts 60, 61, or 63, including specifically 40 C.F.R. Part 63, Subpart VVVVVV.

43.     No later than July 31 and January 31 of each calendar year, Defendants shall provide EPA with the estimated HAP emissions pursuant to Paragraphs 40- 41 above and submit the estimate to EPA along with the semi-annual report for the respective January 1 – June 30, and July 1-December 31 time periods pursuant to Section VII below (Reporting Requirements).

44.     No later than 180 Days prior to becoming a Major Source of HAPs, Defendants shall submit to Ohio EPA, with a copy to EPA, an application for a Title V Permit that contains all applicable requirements under the CAA including any applicable National Emission Standards for Hazardous Air Pollutants ("NESHAP").  Defendants shall take all actions necessary to obtain a Title V Permit including providing Ohio EPA and EPA any requested information in a timely manner.

45.     By no later than 180 Days after becoming a Major Source of HAPs, Defendants shall submit to EPA a Notification of Compliance Status ("NOCS") report for each NESHAP that is determined to be applicable to the relevant source, but at a minimum an NOCS for the Off-Site Waste NESHAP.  40 C.F.R. § 63.697(a)(1) (Subpart DD).

46.     Nothing in this Consent Decree authorizes Defendants to operate the Facility without all permits required by the CAA including a Title V permit.

## VI.　　SUBMISSIONS AND EPA REVIEW OF DELIVERABLES

47.　　Unless otherwise provided herein, where any provision of this Consent Decree requires or provides that Defendants submit any plan, report, procedure, protocol, or other deliverable (hereinafter each referred to as a "submission") to EPA or where any provision of this Consent Decree specifically references this Section VI, the submission shall be subject to the provisions of this Section.

48.　　For each submission, Defendants shall electronically submit to each EPA addressee listed in Section XIV (Notices) the submission with all relevant data in a widely-recognized electronic data format (such as .pdf or Microsoft® Excel).

49.　　Approval of Deliverables/Submissions Subject to EPA Approval.  The following provisions in Paragraph 49.a-c below shall apply to all submissions that are subject to EPA approval.

　　　　a.　　After review of any submission, EPA shall in writing:

　　　　　　(1)　　approve the submission;

　　　　　　(2)　　approve the submission upon specified conditions;

　　　　　　(3)　　approve part of the submission and disapprove the remainder; or

　　　　　　(4)　　disapprove the submission.

　　　　b.　　If the submission is disapproved in whole or in part pursuant to Subparagraph 49.a(3) or (4) above, Defendants shall, within 50 Days of receiving EPA's disapproval, either correct all deficiencies and resubmit the submission for approval or provide a written explanation of why Defendants do not agree to alter the submission consistent with EPA's written requests as provided.  The Parties shall thereafter attempt to resolve the

disagreements concerning the submission and if the parties cannot agree regarding the submission, Defendants shall either alter the submission consistent with EPA's conditions for approval or invoke Dispute Resolution pursuant to Section X below within 70 Days of receiving EPA's disapproval.

c.      Defendants may proceed to implement the submission or parts thereof before receiving EPA approval but may have to reverse or modify the implementation if it is later disapproved or approved with conditions.

50.     <u>Submissions Subject to EPA Comment</u>.  Unless otherwise provided herein, for submissions under any provision of this Consent Decree that are subject to EPA comment the following provisions shall apply.

a.      EPA may provide written comments on the submission, in whole or in part, or may decline to comment.

b.      If EPA provides written comments within 60 Days of receiving a submission, Defendants shall within 45 Days of receiving EPA comments either: (i) alter the submission consistent with EPA's written comments and resubmit the submission to EPA for comment in accordance with the procedures in this Paragraph 50; or (ii) provide a written explanation of why Defendants do not agree to alter the submission consistent with EPA's written comments.  If the Parties cannot agree regarding the submission within 15 Business Days after EPA's receipt of Defendants' written explanation, Defendants may submit the matter for dispute resolution under Section X below.

c.      If EPA comments on a submission subject to EPA comment more than 60 Days after receipt of the submission, Defendants shall within 45 Days of receiving such

comments either: (i) alter the submission consistent with EPA's written comments or (ii) where implementation of EPA comments would be unduly burdensome given the degree to which Defendants have proceeded in implementing measures in the submission, invoke dispute resolution under Section X of this Decree.

51.     <u>Implementation of Submissions Subject to EPA Comment or Approval</u>. Unless otherwise provided for herein, Defendants shall implement the measures reflected in all submissions that have been approved or commented on by EPA as follows.

a.     For submissions approved in whole or part by EPA, or commented on by EPA within 60 Days of EPA receipt, or subject to EPA comment but no comments have been received within 60 Days of EPA receipt, Defendants shall implement the measures therein, or approved portion thereof, in accordance with the requirements therein as modified by EPA approval conditions or comments (if any) by the latter of: (i) the date(s) set forth in the submission; or (ii) 45 Days after receipt of EPA approval of, conditioned approval of, or comments on the submission; or (iii) 70 Days after EPA receipt of the submission where no EPA comments have been received; or (iv) 45 Days after conclusion of any dispute resolution process regarding the submission.

b.     For submissions where EPA submits comments more than 60 Days after receipt of the submission, Defendants shall implement the measures in the submission as follows.

(1)     Defendants shall implement the measures in the submission as modified by EPA's comments unless they establish that such implementation would be unduly burdensome given the degree to which Defendants has already proceeded to implement measures

in the submission. In such case, Defendants shall invoke dispute resolution within 45 Days of receipt of EPA's comments and shall implement the measures in the submission within 45 Days of conclusion of the dispute resolution process that requires implementation of any measures in the submissions in accordance with EPA comments in whole or part.

(2)     Unless Defendants invoke dispute resolution pursuant to Subparagraphs 49.b and 50.b above, Defendants shall implement measures in a submission in accordance with the requirements therein as modified by EPA comments by the latter of: (i) the date(s) set forth in the submission as modified by EPA comments; or (ii) 45 Days after receipt of EPA comments on the submission.

52.     <u>Stipulated Penalties As Applied to Submissions</u>. Any stipulated penalties applicable to an original submission, as provided in Section VIII, shall accrue during the applicable EPA review period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendants' obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

53.     <u>Certifications of Submissions</u>.

a.     Wherever this Consent Decree requires that Defendants "certify" a notification, report, plan, statement, or other submission, such submission shall be signed by an official of Defendants and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for

gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete as of the date of this signature.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

b.      This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.  However, in such cases, Defendants shall certify the submission as soon as practicable.

54.     Notwithstanding the review or approval by any agency of the United States of any plans, reports, policies, or procedures formulated pursuant to the Consent Decree, Defendants will remain solely responsible for compliance with those terms of the Consent Decree that apply to or require action or omissions by Defendant, all applicable permits, and all applicable federal, state, regional, and local laws and regulations.

55.     <u>Permits</u>.  Where any requirement under this Section requires Defendants to obtain a federal, state, or local permit or approval, Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Defendants may seek relief under the provisions of Section IX (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendants have submitted timely and complete applications and have taken all other actions necessary to obtain all such permits or approvals.

## VII.      **REPORTING REQUIREMENTS**

56.     In addition to satisfying any reporting and submission requirements under RCRA or the CAA, Defendants shall submit the following periodic reports to EPA:

a.      No later than July 31st and January 31st of each calendar year after the Date of Lodging and continuing until Termination of this Decree pursuant to Section XVIII, Defendants shall submit by electronic mail a semi-annual report for the time periods of January 1 through June 30, and July 1 through December 31 respectively (reporting period) that includes:

(1)      copies of any RCRA or CAA permit applications or requests to renew or modify such permits submitted to EPA or authorized state agencies during the reporting period;

(2)      copies of any permits issued under RCRA or the CAA by EPA or authorized state agencies during the reporting period;

(3)      description of the status of any pending permit applications under RCRA or the CAA with EPA or authorized state agencies;

(4)      HAP emissions estimates for the Facility determined in accordance with Paragraphs 40-43 above including all underlying information and data supporting the estimate;

(5)      copies of submissions to EPA or authorized state agencies during the reporting period that were required by RCRA or CAA permits;

(6)      a description of any non-compliance with the requirements of this Consent Decree and an explanation of the non-compliance's likely cause(s) and of the remedial steps taken, or to be taken, to prevent or minimize such deviation; and

(7)      the RCRA Subpart BB Program and Subpart CC Program Compliance Status Reports required to be created by Paragraphs 31 and 37 above.

b.      If Defendants deviate from, or have reason to believe that they may
deviate from, any requirement of this Consent Decree, Defendants shall notify the United States
of such deviation and its likely duration, in writing, within ten Business Days of the Day
Defendants first become aware of the deviation, with an explanation of the deviation's likely
cause and of the remedial steps taken, or to be taken, to prevent or minimize such deviation.  If
the cause of a deviation cannot be fully explained at the time the report is due, Defendants shall
so state in the report.  Defendants shall investigate the cause of the deviation and shall then
submit an amendment to the report, including an explanation of the cause of the deviation, within
30 Days of the Day Defendants become aware of the cause of the deviation.  Nothing in this
Paragraph or the following Paragraph relieves Defendants of their obligation to provide the
notice required by Section IX (Force Majeure).

57.     Whenever any violation of this Consent Decree or of any applicable permits or
any other event affecting Defendants' performance under this Decree, or the performance of its
Facility, may pose an immediate threat to the public health or welfare or the environment,
Defendants shall notify EPA orally or by electronic or facsimile transmission as soon as possible,
but no later than 24 hours after Defendants first knew of the violation or event.  This procedure is
in addition to the requirements set forth in the preceding Paragraph.

58.     All reports shall be submitted to the persons designated in Section XIV (Notices).
Each report submitted by Defendants under this Section shall be certified by an official of
Defendants pursuant to Section VI (Submissions and EPA Review of Deliverables).

59.     The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by RCRA, the CAA, or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

60.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII.     STIPULATED PENALTIES

61.     Defendants shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.  Payment by Defendants of stipulated penalties shall not constitute an admission of a violation of the Consent Decree.

62.     Late Payment of Civil Penalty.  If Defendants fail to pay any portion of the civil penalty required to be paid under Section IV (Civil Penalty) when due, Defendants shall pay a stipulated penalty of $5,000 per Day for each Day that the payment is late.

63.     Violations of Consent Decree Compliance Requirements.  The following stipulated penalties shall accrue for each violation of this Consent Decree in the amounts set forth below per violation per Day.

      a.     Violation of Paragraph 16 (any applicable requirement of RCRA or the CAA) unless the same violation is subject to a stipulated penalty pursuant to Subparagraphs 63.b-g below:

| Type of Violation | Period of Non-Compliance | Stipulated Penalty Per Violation Per Day |
|---|---|---|
| Violation of any emissions limits, standards or control device requirements in RCRA, the CAA, or regulations promulgated thereunder | Days 1-14 | $1000 |
| | Days 15-30 | $2000 |
| | Days 31 and beyond | $5000 |
| Violation of any monitoring or testing requirements in RCRA, the CAA, or regulations promulgated thereunder | Days 1-14 | $750 |
| | Days 15-30 | $1500 |
| | Days 31 and beyond | $3000 |
| Any other violation of RCRA, the CAA or regulations promulgated thereunder | Days 1-14 | $300 |
| | Days 15-30 | $600 |
| | Days 31 and beyond | $1200 |

      b.     Violation of Paragraphs 18 or 24 (including submission of required RCRA applications, failure to take all actions necessary to obtain federal RCRA permit and cooperate with EPA with respect to requests for information on such applications):

| Period of Non-Compliance | Stipulated Penalty Per Violation Per Day |
|---|---|
| Days 1-14 | $300 |
| Days 15-30 | $600 |
| Days 31 and beyond | $1200 |

      c.     Undertaking any Potential RCRA Subpart AA Triggering Change without complying with the requirements of Paragraphs 19-22 of this Consent Decree and/or non-

compliance with any requirement in an approved RCRA Subpart AA Compliance Plan in
violation of Paragraph 23:

| Period of Non-Compliance | Stipulated Penalty Per Violation Per Day |
|---|---|
| Days 1-14 | $750 |
| Days 15-30 | $1500 |
| Days 31 and beyond | $3000 |

> d.    Failure to submit a RCRA Subpart BB and/or RCRA Subpart CC

Compliance Plan in accordance with Paragraphs 25 and 32:

| Period of Non-Compliance | Stipulated Penalty Per Violation Per Day |
|---|---|
| Days 1-14 | $300 |
| Days 15-30 | $600 |
| Days 31 and beyond | $1200 |

> e.    Violation of any requirement set forth in Paragraphs 25-37 (RCRA

Subparts BB and CC Compliance):

| Period of Non-Compliance | Stipulated Penalty Per Violation Per Day |
|---|---|
| Days 1-14 | $750 |
| Days 15-30 | $1500 |
| Days 31 and beyond | $3000 |

> f.    Violation of any Consent Decree CAA requirements:

| Type of Violation | Period of Non-Compliance | Stipulated Penalty Per Violation Per Day |
|---|---|---|
| Violation of Paragraphs 39 and/or 41-42 relating to FESOP Amendment and inclusions | Days 1-14 | $300 |
| | Days 15-30 | $600 |
| | Days 31 and beyond | $1200 |
| Violation of Paragraphs 40 and/or 43 relating to HAP emission estimates | Days 1-14 | $750 |
| | Days 15-30 | $1500 |
| | Days 31 and beyond | $3000 |

| Failure to implement good pollution control practices as required by Paragraph 41 | Days 1-14 | $750 |
|---|---|---|
| | Days 15-30 | $1500 |
| | Days 31 and beyond | $3000 |
| Failure or late submission of Title V Permit application and/or NOC if required by Paragraphs 44 and/or 45 | Days 1-14 | $750 |
| | Days 15-30 | $1500 |
| | Days 31 and beyond | $3000 |

   g. Any other violation of this Consent Decree for which a stipulated penalty is not specified in Subparagraphs 63.a-f above:

| Period of Non-Compliance | Stipulated Penalty Per Violation Per Day |
|---|---|
| Days 1-14 | $300 |
| Days 15-30 | $600 |
| Days 31 and beyond | $1200 |

   64. Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

   65. Except as set forth in Paragraph 69 below, Defendants shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

   66. Any demand for the payment of stipulated penalties will identify the particular violation(s) to which the stipulated penalty relates, the dates of violation, the stipulated penalty amount the United States is demanding for each violation, the calculation method underlying the demand and the grounds upon which the demand is based.

   67. Defendants shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraphs 13-14 above, except that the

United States v. Bedford Environmental Services, et al Consent Decree   Page 34.

transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

68.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

69.     Stipulated penalties shall continue to accrue as provided in Paragraph 64 above, during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by a concession of Defendants, agreement of the Parties or by a decision of EPA that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with Interest, to the United States within 30 Days of the effective date of such concession, the agreement or the receipt of EPA's decision or order.

b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with Interest, within 60 Days of receiving the Court's decision or order, except as provided in Subparagraph 69.c below.

c.     If any Party appeals the District Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with Interest, within 15 Days of receiving the final appellate court decision.

70.     <u>Obligations Prior to the Effective Date</u>.  Upon the Effective Date, the stipulated penalty provisions of this Decree shall be enforceable with regard to any and all violations that have occurred between the Date of Lodging and the Effective Date provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

71.     If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for Interest on such penalties, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

72.     The payment of penalties and Interest, if any, shall not alter in any way Defendants obligation to complete the performance of the requirements of this Consent Decree.

73.     <u>Non-Exclusivity of Remedy</u>.  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XII (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendants' violation of this Decree or applicable law, including but not limited to an action against Defendants for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## IX.     FORCE MAJEURE

74.     "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendants or of Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation.  The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force

majeure event (i) as it is occurring and (ii) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

75.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendants shall provide notice orally or by electronic or facsimile transmission to the United States, within 72 hours of when Defendants first knew that the event might cause a delay. Within seven Days thereafter, Defendants shall provide in writing to the United States an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendants shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendants' contractors knew or should have known.

76.     If the United States agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that

are affected by the force majeure event will be extended by United States for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. The United States will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

77.     If the United States does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, the United States will notify Defendants in writing of its decision.

78.     If Defendants elect to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than 15 Days after receipt of the United States' notice. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 74 and 75. If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to the United States and the Court.

## X.     DISPUTE RESOLUTION

79.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism for Defendants to resolve

disputes arising under or with respect to this Consent Decree. Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendants arising under this Decree.

80.    Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendants send the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

81.    Formal Dispute Resolution.  Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph 80, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

82.    The United States shall serve its Statement of Position within 45 Days of receipt of Defendants' Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of

Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

83.     An administrative record of the dispute shall be maintained by EPA and shall contain all Statements of Position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

84.     Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIV (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 20 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph 82.  The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

85.     The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court.  Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

86.     <u>Standard of Review</u>.

        a.     <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 81 above pertaining to a matter that involves the United States' exercise of discretion under this Consent Decree, the Defendants shall have the burden of proof based on the administrative record

(including the Parties' Statements of Position) and the applicable standard of review as set forth in the Administrative Procedure Act, 5 U.S.C. §§ 500 et seq. shall apply.

        b.   <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 81 above, the Defendants shall bear the burden of demonstrating that their position complies with this Consent Decree.

87.   The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of non-compliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 69 above.  If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI.    INFORMATION COLLECTION AND RETENTION

88.   The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

        a.   monitor the progress of activities required under this Consent Decree;

        b.   verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

        c.   obtain samples and, upon request, splits of any samples taken by Defendants or its representatives, contractors, or consultants;

        d.   obtain documentary evidence, including photographs and similar data; and

e.      assess Defendants' compliance with this Consent Decree.

89.     Upon request, Defendants shall provide EPA or its authorized representatives splits of any samples taken by Defendants.  Upon request, EPA shall provide Defendants splits of any samples taken by EPA.

90.     Until five years after the Termination of this Consent Decree pursuant to Section XVIII, Defendants shall retain, and shall instruct their contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or agents' possession or control, or that come into their or their contractors' or agents' possession or control, and that relate to Defendants' performance of their obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

91.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States within the 90-Day period, Defendants shall deliver any such documents, records, or other information to EPA.  Defendants may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendants assert such a privilege, they shall provide the following: (i) the title of the document, record, or information; (ii) the date of the

document, record, or information; (iii) the name and title of each author of the document, record, or information; (iv) the name and title of each addressee and recipient; (v) a description of the subject of the document, record, or information; and (vi) the privilege asserted by Defendants. Defendants shall make no claim of privilege or protection (other than claims of Confidential Business Information) regarding documents, records, or other information generated or submitted pursuant to the requirements of this Consent Decree.

92.     Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

93.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

### XII.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

94.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the Date of Lodging.

95.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree except as expressly stated in Paragraph 94 above.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under RCRA, the CAA or implementing regulations, or under other federal

laws, regulations, or permit conditions except as expressly stated in Paragraph 94 above.  The

United States further reserves all legal and equitable remedies to address any imminent and

substantial endangerment to the public health or welfare or the environment arising at, or posed

by, the Facility, whether related to the violations addressed in this Consent Decree or otherwise.

96.    In any subsequent administrative or judicial proceeding initiated by the United

States for injunctive relief, civil penalties, and other appropriate relief relating to the Facility or

Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim

based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim

preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by

the United States in the subsequent proceeding were or should have been brought in the instant

case, except with respect to claims that have been specifically resolved pursuant to Paragraph 94.

97.    This Consent Decree is not a permit, or a modification of any permit, under any

federal, state, or local laws or regulations.  Defendants are responsible for achieving and

maintaining complete compliance with all applicable federal, state, and local laws, regulations,

and permits; and Defendants' compliance with this Consent Decree shall be no defense to any

action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.

The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in

any manner that Defendants' compliance with any aspect of this Consent Decree will result in

compliance with provisions of the CAA or RCRA or with any other provisions of federal, state,

or local laws, regulations, or permits.

98.    This Consent Decree does not limit or affect the rights of Defendants or of the

United States against any third parties, not party to this Consent Decree, nor does it limit the

rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

99.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII.     COSTS

100.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

## XIV.     NOTICES

101.     Unless otherwise specified in this Decree, whenever communications (including notices, submissions, reports) are required by this Consent Decree, they shall be made in writing and sent via email to the recipients as set forth below (unless the communication is too large for electronic submission in which case they shall be sent by mail or overnight service).  Where any provision of this Consent Decree provides that a communication be sent to the United States, it shall be sent to both the Department of Justice and EPA.  Where any provision of this Consent Decree provides that a communication be sent to EPA, Defendants need not send the communication to the Department of Justice.

As to the United States by email:     eescdcopy.enrd@usdoj.gov
                                      Re: DJ # 90-7-1-11845

As to the United States by mail:      EES Case Management Unit
                                      U.S. Department of Justice
                                      P.O. Box 7611
                                      Washington, D.C. 20044-7611
                                      Re: DJ # 90-7-1-11845

As to EPA:

R5enforcement@epa.gov
Attn: Compliance Tracker, AE-18J
Air Enforcement and Compliance Assurance
Branch
U.S. Environmental Protection Agency Region 5
77 W. Jackson Boulevard
Chicago, Illinois 60604

Derrick Samaranski (LR-17J)
RCRA Branch
U.S. EPA, Region 5
77 West Jackson Blvd.
Chicago, IL  60604
(312) 886-7812
Smaranski.Derrick@epa.gov

Constantinos Loukeris
Clean Air Branch
U.S. EPA, Region 5
77 West Jackson Blvd.
Chicago, IL  60604
Loukeris.Constantinos@epa.gov

Nicole Cantello
Assistant Regional Counsel
U.S. EPA, Region 5
77 West Jackson Blvd.
Chicago, IL  60604
Nicole Cantello cantello.nicole@epa.gov

As to Defendants:

Richard M. Timm, Jr.
General Counsel
Bedford Environmental Services, LLC
7013 Krick Rd.
Bedford, OH 44145
rtimm@chemtron-corp.com

Kevin D. Margolis, Esq.
Benesch, Friedlander, Coplan & Aronoff, LLP
200 Public Square
Suite 2300
Cleveland, OH 44114
kmargolis@beneschlaw.com

102.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

103.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.    EFFECTIVE DATE

104.    The Effective Date shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendants hereby agree that they shall be bound to perform duties scheduled to occur prior to the Effective Date.  In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVI.    RETENTION OF JURISDICTION

105.    The Court shall retain jurisdiction over this case for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, or effectuating or enforcing compliance with the terms of this Decree.

## XVII.    MODIFICATION

106.    The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

107.    Any disputes concerning modification of this Decree shall be resolved pursuant to
Section X (Dispute Resolution), provided, however, that, instead of the standard of proof
provided by Paragraph 86, the Party seeking the modification bears the burden of demonstrating
that it is entitled to the requested modification in accordance with Federal Rule of Civil
Procedure 60(b).

## XVIII.    <u>TERMINATION</u>

108.    This Consent Decree may be terminated only when all of the following conditions
have been satisfied:

a.    Defendants have completed and maintained satisfactory compliance for a
period of four years with the requirements of Section V (Compliance Requirements), Section VII
(Reporting Requirements), and Section XI (Information Collection and Retention); and

b.    Defendants have paid the civil penalty and any accrued stipulated
penalties as required by this Consent Decree; and

c.    EPA has issued a federal RCRA permit for the Facility that authorizes the
treatment, storage, and disposal of hazardous wastes subject to RCRA Subparts BB, and CC; and

d.    If any units or equipment at the Facility have become subject to the
requirements of RCRA Subpart AA, EPA has issued a federal RCRA permit for the Facility that
authorizes the treatment, storage, and disposal of hazardous wastes subject to RCRA Subpart
AA; and

e.    If the Facility has become a Major Source of HAPs, a Federally
enforceable Title V Permit has been issued for the Facility that contains all applicable CAA
requirements.

109.  <u>Termination Procedures</u>.

a.  Once the conditions set forth in Paragraph 108 above have been satisfied, Defendants may serve upon the United States a Request for Termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

b.  Following receipt by the United States of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree as set forth in Paragraph 108 above.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

c.  If the United States does not agree that the Decree may be terminated or does not respond to Defendants' Request for Termination within 90 Days, Defendants may invoke Dispute Resolution under Section X.  However, Defendants shall not seek Dispute Resolution of any dispute regarding termination until 90 Days after service of its Request for Termination.

## XIX.  <u>PUBLIC PARTICIPATION</u>

110.  This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendants consent to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to

challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XX.     SIGNATORIES/SERVICE

111.     Each undersigned representative of Defendants and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

112.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXI.     INTEGRATION

113.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Decree, the Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXII.     FINAL JUDGMENT

114.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Federal Rules of Civil Procedure 54 and 58.


Dated and entered this 13th day of ___March___, 20 19

_____
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE

FOR THE UNITED STATES OF AMERICA:

Date: 1/29/19

KAREN S. DWORKIN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

ELIZABETH L. LOEB
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611

JUSTIN E. HERDMAN
United States Attorney
Northern District of Ohio

/s/ Steven J. Paffilas
STEVEN J. PAFFILAS (Bar No. 0037376)
Assistant United States Attorney
Northern District of Ohio
801 W. Superior Avenue, Suite 400
Cleveland, OH 44113
Telephone:  (216) 622-3698
Facsimile:  (216) 522-4928
Steven.Paffilas@usdoj.gov

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

Date: _12/21/2018_  *Acting For*  _Bertram C. Frey_
_____
T. LEVERETT NELSON
Regional Counsel
U.S. Environmental Protection Agency, Region 5

_____
Nicole Cantello
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 5
Office of Regional Counsel

FOR DEFENDANT BEDFORD ENVIRONMENTAL SERVICES, LLC

Date:   11/18/2018

Mikel B. Harding
Chief Financial Officer

FOR DEFENDANT KRICK ROAD HOLDINGS, LLC

Date:   11/18/2018

Mikel B. Harding
Chief Financial Officer

United States v. Bedford Environmental Services, et al Consent Decree                    Page 54.